Clerk's Office
Filed Date: 12/16/21

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MICHAEL MCLEER (a.k.a. MICHAEL KAVES), individually and on behalf of a class of all others similarly situated,

                              Plaintiff,

-against-

NEW YORK CITY POLICE DEPARTMENT
and CITY OF NEW YORK,

                              Defendants.
------------------------------------------------------------x

NOT FOR PUBLICATION
MEMORANDUM & ORDER
21-cv-3093 (CBA)(CLP)

AMON, United States District Judge:

Plaintiff Michael McLeer, also known as "Kaves," brings suit individually and on behalf of a class of similarly situated artists against the City of New York (the "City") and the New York City Police Department ("NYPD").[1] McLeer principally alleges that the NYPD has engaged in an indiscriminate "graffiti clean-up campaign," which has targeted both illegal graffiti as well as legal street art that was created with the permission of property owners. McLeer alleges causes of action under the Visual Artists Rights Act ("VARA"), as well as under § 1983 for violations of the Due Process Clause and the First Amendment. McLeer seeks to preliminarily and permanently enjoin Defendants and their officers from "engaging in destruction, modification, mutilation, and distortion of street art and a full stop of the 'graffiti clean up' operation"; an order from the court to revise the Defendants' policies regarding graffiti clean-up; compensatory, exemplary and punitive damages, as well as costs and fees. (D.E. # 1 ("Compl.") 25-26.) On October 4, 2021, Defendants served McLeer with their Motion to Dismiss his complaint. Defendants argued, in part, that McLeer's claims under § 1983 should be dismissed for his

---

[1] McLeer has agreed to withdraw his claims against the NYPD, recognizing that it is a non-suable entity where the City is also a defendant. As a result, the only remaining defendant in this action is the City of New York.

failure to prove municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978).

It is well settled that there are four possible avenues for holding a municipality liable for constitutional deprivations under Monell. A plaintiff can prove 1) that a formal policy adopted and promulgated by the municipality caused her constitutional injury; 2) that an official "with final policy-making authority" violated her constitutional rights, Domenech v. City of New York, 919 F. Supp. 702, 710 (S.D.N.Y. 1996); 3) that a practice "so persistent and widespread that it constitutes a 'custom or usage' and implies the constructive knowledge of policy-making officials; or 4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact," Chamberlain v. City of White Plains, 986 F. Supp. 2d 363, 390 (S.D.N.Y. 2013) (Moray v. City of Yonkers, 924 F. Supp. 8, 12 (S.D.N.Y. 1996)).

In their briefing, Defendants characterized McLeer's theory of municipal liability as falling into the "failure to train" category of municipal liability. (D.E. # 19 ("Mem. Supp.") 18.) McLeer objected to this characterization in his brief in opposition, arguing instead that the complaint alleged municipal liability under the theory that the clean-up campaign was "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware." (D.E. # 21 ("Mem. Opp.") 17.)

Oral argument was held on Defendants' motion on December 8, 2021. At oral argument, I asked McLeer's counsel which theory she intended to pursue in order to establish municipal liability. Although McLeer's counsel indicated that she intended to pursue both "failure to train"

and "consistent and widespread" theories of liability, I expressed concern that neither theory could be satisfied under the existing complaint, which only specifically alleges the destruction of McLeer's mural, Death from Above (the "Mural"). As a result, McLeer's counsel appeared to argue instead that the City's formal policy of graffiti clean up, in which neither police officers nor city volunteers ask property owners whether they consented to the creation of street art on their property, gives independent grounds for municipal liability. This argument arguably falls under one of the first two theories of liability under Monell: 1) that a formal policy adopted by the City violated McLeer's constitutional rights; or 2) that an official with final policy-making authority violated McLeer's constitutional rights.

Allegations in McLeer's complaint are arguably consistent with the theory that the City has a formal policy of graffiti clean up that does not include inquiring of property owners if they consented to the creation of street art on their property. This theory, however, is not expressly argued in McLeer's motion to dismiss briefing. As a result, the Defendants have not had an opportunity to respond to this argument, and I have not had the opportunity to review it in full.

Accordingly, I order that McLeer shall, by December 30, 2021, file a letter with the Court indicating whether he believes he can pursue a theory of Monell liability based on a formal policy of the City. If so, I further order Plaintiff to file supplemental briefing by January 12, 2022 on whether the Complaint can support a theory of municipal liability under the theory that either 1) a formal policy of the City of New York caused his constitutional deprivation; or 2) that the actions of an official policymaker of the City of New York caused his constitutional deprivation. Defendants shall file any supplemental briefing in opposition by January 26, 2022.

SO ORDERED

December 16, 2021
Brooklyn, NY

s/Carol Bagley Amon
Carol Bagley Amon
United States District Judge